**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

| |
|---|
| TEAMSTERS LOCAL UNION NO. 804 and TEAMSTERS AMAZON NATIONAL NEGOTIATING COMMITTEE, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE CITY OF NEW YORK; NEW YORK CITY POLICE COMMISSIONER JESSICA TISCH, *in her official capacity*; NEW YORK CITY MAYOR ERIC ADAMS, *in his official capacity*; <br><br> *Defendants*. |

Case No. 24-cv-08683

---

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER**

---

**EISNER DICTOR & LAMADRID, P.C.**
Thomas J. Lamadrid
39 Broadway, Suite 1540
New York, NY 10006

**COHEN&GREEN P.L.L.C.**
Elena L. Cohen
J. Remy Green
Jessica Massimi
Leena Widdi, *pro hac vice forthcoming*
1639 Centre Street, Suite 216
Ridgewood, NY 11385

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY 10007

December 19, 2024

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................i

TABLE OF AUTHORITIES .....................................................................................................ii

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL STATEMENT ..........................................................................................................1

    A.   Background on Plaintiffs and Amazon. ....................................................................1

    B.   The Strike and Picket. ...............................................................................................2

ARGUMENT ...............................................................................................................................4

  I.   Plaintiffs Will Be Irreparably Harmed Absent a TRO.................................................5

  II.   Plaintiffs are Likely to Succeed on the Merits............................................................7

    A.   Plaintiffs are likely to succeed on their First Amendment claim. ............................7

      i.   Defendants violated Plaintiffs' First Amendment-based rights under a so-called "time/place/manner" analysis. ..................................................................9

    B.   Plaintiffs are likely to succeed on their 29 U.S.C. § 157 claim. ..............................12

  III.   The Balance of the Equities Favors Plaintiffs. ..........................................................14

  IV.   No Security Should be Required. ................................................................................15

CONCLUSION............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akinnagbe v. City of New York,*
128 F.Supp.3d 539 (E.D.N.Y. 2015) .................................................................................8, 9

*Am. Patriot Express v. City of Glens Falls,*
2020 U.S. Dist. LEXIS 170902, 2020 WL 5593929 (N.D.N.Y. Sept. 18, 2020) ............14

*Am.-Arab Anti-Discrimination Comm. v. City of Dearborn,*
418 F.3d 600 (6th Cir. 2005)...........................................................................................8

*Andino v. Fischer,*
555 F. Supp. 2d 418 (S.D.N.Y. 2008).............................................................................4

*Boos v. Barry,*
485 U.S. 312 ....................................................................................................................7

*Bronx Household of Faith v. Board of Educ. of City of New York,*
331 F.3d 342 (2d Cir. 2003)............................................................................................6

*Cantwell v. Connecticut,*
310 U.S. 296 (1940).........................................................................................................9

*Case v. City of New York,*
233 F.Supp.3d 372 (S.D.N.Y. 2017).....................................................................7, 9, 11

*Charette v. Town of Oyster Bay,*
159 F.3d 749 (2d Cir.1998) ............................................................................................5

*Christina Gonzalez v. NYC, 14 Civ. 7721,*
2016 WL 5477774 (SDNY Sept. 29, 2016) ....................................................................9

*City of Los Angeles v. Preferred Communications, Inc.,*
476 U.S. 488 (1986).......................................................................................................11

*Cox v. Louisiana,*
379 U.S. 536 (1965).........................................................................................................9

*CSEA v. NLRB,*
569 F.3d 88 (2d Cir. 2009) ...........................................................................................13

*Deegan v. City of Ithaca,*
444 F.3d 135 (2nd Cir. 2006)....................................................................................8, 10

*Doctor's Assocs., Inc. v. Distajo,*
    107 F.3d 126 (2d Cir. 1997) ........................................................................................ 15

*Edenfield v. Fane,*
    507 U.S. 761 (1993) ...................................................................................................... 11

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,*
    485 U.S. 568 (1988) ................................................................................................ 12, 13

*Edwards v. South Carolina,*
    3772 U.S. 229 (1963) ...................................................................................................... 9

*Elrod v. Burns,*
    427 U.S. 347 (1976) .................................................................................................... 6, 8

*Frisby v. Schultz,*
    487 U.S. 474 (1988) ...................................................................................................... 10

*Golden State Tr. Corp. v. Los Angeles,*
    493 US 103 (1989) (*Golden State II*) ........................................................................ 12

*Gonzalez v. City of New York,*
    2015 WL 6873451 (S.D.N.Y. Nov. 9, 2015) ................................................................ 7

*Greater New Orleans Broad. Assoc., Inc., v. U.S.,*
    527 U.S. 173 (1999) ...................................................................................................... 11

*H.E.R.E. v. v. City of New York,*
    311 F.3d 534 (2nd Cir. 2002) ........................................................................................ 8

*Hague v. CIO,*
    307 U.S. 496 (1939) ........................................................................................................ 8

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
    596 F.2d 70 (2d Cir. 1979) ............................................................................................ 6

*Jolly v. Coughlin,*
    76 F.3d 468 (2d Cir.1996) ............................................................................................. 5

*Jones v. Parmley,*
    465 F.3d 46 (2nd Cir. 2006) ...................................................................................... 7, 9

*Lynch v. City of New York,*
    589 F.3d 94 (2d Cir. 2009) ............................................................................................ 5

*Marcavage v. City of New York,*
    689 F.3d 98 (2nd Cir. 2012) ..................................................................................... 8, 12

*McCullen v. Coakley,*
  134 S.Ct. 2518 (2014) ................................................................................8

*Members of City Council v. Taxpayers for Vincent,*
  466 U.S. 789 (1984) ..................................................................................12

*N.Y. Progress & Prot. PAC v. Walsh,*
  733 F.3d 483, 2013 U.S. App. LEXIS 21579, 2013 WL 5746142 (2d. Cir. Oct. 24,
  2013) .........................................................................................................14

*NAACP v. Patterson,*
  357 U.S. 449 (1958) ...................................................................................8

*Ohr v. International Union of Operating Engineers, Local 150, AFL-CIO,*
  612 F.Supp.3d799 (N.D. Ill. 2020) ..........................................................13

*Olivieri v. Ward,*
  801 F.2d 602 (2nd Cir. 1986) ...................................................................11

*Overstreet v. United Bhd. Of Carpenters & Joiners of Am., Loc. Union No. 1506,*
  409 F.3d 1199 (9th Cir. 2005) ..................................................................13

*Pacific Gas and Elec. Co. v. Public Utilities Comm'n of California,*
  475 U.S. 1, 106 S. Ct. 903, 89 L. Ed. 2d 1 (1986) ..................................14

*Register.com, Inc. v. Verio, Inc.,*
  356 F.3d 393 (2d Cir. 2004) .......................................................................6

*Roberts v. United States Jaycees,*
  468 U.S. 609 (1984) ....................................................................................7

*Rodriguez ex rel. Rodriguez v. DeBuono,*
  175 F.3d 227 (2d Cir. 1998) .......................................................................5

*Salinger v. Colting,*
  607 F.3d 68 (2d Cir. 2010) .........................................................................5

*Stagg P.C. V. United States Dep't of State,*
  158 F.Supp. 3d 203 (S.D.N.Y. Jan. 26, 2016) ..........................................6

*Steelworkers v. Labor Board,*
  376 U.S. 492 (1964) ..................................................................................13

*United States v. Alvarez,*
  567 U.S. 709, 132 S. Ct. 2537, 183 L. Ed. 2d 574 (2012) (*plurality opn.*) .............5

*USA Recycling, Inc. v. Town of Babylon,*
  66 F.3d 1272 (2d Cir. 1995) .......................................................................5

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ............................................................................................................... 10

*Wiles v. City of New York*,
   13-cv-2898 (TPG) 2016 WL 6238609 (SDNY Oct. 25, 2016) .......................................... 9

*Zalaski v. City of Hartford*,
   723 F.3d 382 (2nd Cir. 2013) ............................................................................................ 9

**Statutes**

29 U.S.C. § 157 .......................................................................................................... 2, 12, 13, 14

29 U.S.C. § 158(a)(1) .................................................................................................................. 2

29 U.S.C. § 158(a)(3) .................................................................................................................. 2

29 U.S.C. § 158(a)(5) .................................................................................................................. 2

29 U.S.C. § 158(d) ...................................................................................................................... 2

42 U.S.C. § 1983 .......................................................................................................... 12, 13, 14

**Other Authorities**

@HellgateNY, X (formerly Twitter), (10:19 AM, December 19, 2024),
   https://x.com/HellGateNY/status/1869779486868435370 ................................................ 3

@*tiffany_caban,* X (formerly Twitter) (12:36 PM, Dec. 19, 2024),
   https://x.com/tiffany_caban/status/1869813956891816432 ............................................. 4

Fed. R. Civ. P. 65(c) ................................................................................................................. 15

*NYPD Strikes Back,* Hellgate (December 19, 2024),
   https://hellgatenyc.com/amazon-teamsters-strike-queens-arrests/ (last visited
   December 19, 2024) .............................................................................................................. 4

U.S. Const. amend. I .......................................................................................................... *passim*

## PRELIMINARY STATEMENT

Plaintiff Teamsters Local Union No. 804 ("Local 804") instituted a picket line, after the International Brotherhood of Teamsters began a lawful primary strike against Amazon on December 19, 2024.  That strike comes hot on the heels of a long history of Amazon engaging in a systemic campaign to undermine and destroy its unions, including its refusal to recognize or bargain with Plaintiff Teamsters Amazon National Negotiating Committee ("TANNC").  Dalton Dec. ¶¶ 7, 11; Pomeranz Dec. ¶ 7.[1]  That strike has led pickets across the country — including, as relevant here, at Amazon's DBK4 facility in Queens.

 But at that peaceful picket, the City's police department (NYPD) erected barricades around the entire perimeter of the DBK4 facility.  NYPD split up picketers into two separate, smaller groups, in separate areas.  And NYPD arrested picketers.  Members of the NYPD even assaulted and threatened members of the picket.

All of that has the undisputable effect of interfering with the protected right to picket.  So this action — and this motion for a temporary restraining order — seeks to restore the basic status quo:  Unions can picket, without the NYPD acting as strikebreakers.

## FACTUAL STATEMENT

A.    Background on Plaintiffs and Amazon.

In an election conducted by the NLRB in April 2022, pursuant to Section 9(a) of the NLRA, 29 U.S.C. § 159(a), a majority of employees at Amazon's JFK8 fulfillment center selected ALU-IBT Local 1 to serve as their exclusive bargaining representative.  Certification of these results is currently pending.  Complaint ("Comp.") ¶17; Declaration of Josh Pomeranz ("Pomeranz Dec.)  ¶ 4.  In performance of its statutory duty to collectively bargain on behalf of these employees, Plaintiffs and

---

[1] The body of this brief defines the terms used here.

their predecessors have been attempting to negotiate a collective bargaining agreement with Amazon for several years. Comp. ¶18; Declaration of Liana Dalton ("Dalton Dec.") ¶ 5.

Despite these efforts, and contrary to its obligation under Section 8(d) of the NLRA. 29 U.S.C. § 158(d), Amazon has refused to recognize or bargain with ALU-IBT Local 1 or TANNC. Dalton Dec. ¶ 6; Pomeranz Dec. ¶ 5; Comp. ¶ 19. Worse, Amazon has engaged in a systematic campaign of unlawful conduct intended to undermine and destroy ALU-IBT Local 1 and TANNC. Dalton Dec. ¶¶ 7, 11; Pomeranz Dec. ¶ 7.

This campaign includes surveillance, harassment, threats, retaliation, and intimidation. These acts constitute violations of Section 8(a)(1), 29 U.S.C. § 158(a)(1), Section 8(a)(3), 29 U.S.C. § 158(a)(3), and Section 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(5). Several unfair labor practice charges related to this conduct are currently pending before the NLRB. *Id.*

B.     The Strike and Picket.

In protest of Amazon's unlawful conduct, the International Brotherhood of Teamsters, acting in accordance with its International Constitution, began a lawful primary strike against Amazon on December 19, 2024. The strike, and accompanying picket lines, included locations across the country, several of which were in New York City. Dalton Dec. ¶ 8; Pomeranz Dec. ¶ 8.

These activities are protected by Section 7 of the NLRA, which guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.

As relevant here, members of Teamsters Local No. 804 instituted a primary picket line outside several of Amazon's facilities in New York City, including Amazon's DBK4 warehouse, located at 55-15 Grand Ave, Queens, NY 11378. These picket lines were on public property. Comp. ¶ 23. These pickets were lawful primary activity protected under Section 7 of the NLRA. 29 U.S.C. § 157.

At all times, the picket and picketers near Amazon's DBK4 facility were orderly and peaceable in accordance with the Teamsters' picketing instructions. Dalton Dec. ¶ 10; Pomeranz Dec ¶ 10. At no time did any picketers engage in any disorderly, disruptive, violent, threatening, or otherwise unlawful activity. *Id.* Similarly, picketers ensured that they created breaks in the picket to allow pedestrians and vehicles to enter and exit the facility. *Id.*

Nonetheless, less than an hour after the picket began, officers of the NYPD, under color of state law, erected barricades at the entrances to Amazon's DBK4 premises. Dalton Dec. ¶ 12; Pomeranz Dec. ¶ 12. The NYPD erected barricades around the entire perimeter of DBK4, blocking access to the public sidewalk. Pomeranz Dec. ¶ 14; Dalton Dec. ¶ 14. This was done for no ostensible purpose. Comp. ¶ 27.

The NYPD further forced picketers into two separate areas, behind barricades, splitting the picketers into two groups, rather than one unit able to ambulate and move through the area:



*See e.g.,* @HellgateNY, X (formerly Twitter), (10:19 AM, December 19, 2024), https://x.com/HellGateNY/status/1869779486868435370

Because of the NYPD-erected barricades, picketers were prohibited from using the sidewalk to go across the driveway of the DBK4 facility and were therefore significantly limited in their ability to move, demonstrate, and have conversations with or organize fellow workers. Pomeranz Dec. ¶ 15, 17; Dalton Dec. ¶ 15, 17. Those acts are, of course, core parts of picketing.

Moreover, because of the actions of NYPD, to participate in the picket, members of

Teamsters Local 804 and ALU-IBT Local 1 would be required to step onto the street, risking arrest. Pomeranz Dec. ¶ 15; Dalton Dec. ¶ 15.  In fact, shortly after erecting the barricades, members of the NYPD's Strategic Response Group played a recorded message that warned picketers that if they were in the roadway, they would be arrested and charged with disorderly conduct. *Id;* Katie Way, *While Amazon Workers Strike for Better Conditions, the NYPD Strikes Back,* HELLGATE (December 19, 2024), https://hellgatenyc.com/amazon-teamsters-strike-queens-arrests/ (last visited December 19, 2024).

Within hours of the strike and accompanying picket, two members of Teamsters Local 804 were arrested by members of the NYPD, despite the peaceful and orderly nature of the picket.  One member was arrested after NYPD members pulled him out of his Amazon truck.  Members of the NYPD were further observed assaulting and threatening members of Teamsters Local 804 and ALU-IBT Local 1, creating an unsafe and intimidating environment.  Pomeranz Dec. ¶¶14-19; Dalton Dec. ¶¶ 14-19.  *See also, @tiffany_caban,* X (formerly Twitter) (12:36 PM, Dec. 19, 2024), https://x.com/tiffany_caban/status/1869813956891816432 ("NYPD blocked the picket line, threw punches at picketers, and made violent arrests of protesting workers.")

The aforementioned actions were taken as a matter of policy and/or custom by the NYPD, at the direction, implied or express, of Defendant Tisch or Defendant Adams, people with final policymaking authority within the Department.  Comp. ¶ 28.  And, as a result of Defendants' unlawful conduct, members of Teamsters Local 804 and ALU-IBT Local 1 were and remain unable to engage in lawful primary picketing activity protected under Section 7 of the NLRA, 29 U.S.C. § 157, in addition to the First Amendment to the U.S. Constitution, U.S. CONST. amend. I, on public property near Amazon's DBK4 warehouse.

## **ARGUMENT**

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).  To

successfully seek a preliminary injunction, a moving party must show four elements: (1) likelihood of

success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a

preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's

favor; and (4) that the public interest is not disserved by relief. *Salinger v. Colting*, 607 F.3d 68, 79-80

(2d Cir. 2010).

Irreparable harm, however, is the "*sine qua non* for preliminary injunctive relief." *USA*

*Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1295 (2d Cir. 1995). As such, the moving party must

first demonstrate that irreparable harm would be "likely" in the absence of a preliminary

injunction "before the other requirements for the issuance of [a preliminary inunction] will be

considered." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998).

"In general, the district court may grant a preliminary injunction if the moving party

establishes (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b)

sufficiently serious questions going to the merits of its claims to make them fair ground for

litigation, plus [(3)] a balance of the hardships tipping decidedly in favor of the moving party." *Lynch*

*v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted).

## I.     Plaintiffs Will Be Irreparably Harmed Absent a TRO.

As set out above, Defendants are interfering with a national strike and preventing — or at

least deterring — unions and workers from picketing.  The First Amendment's freedom of speech

clause means that, as "a general matter . . . government has no power to restrict expression because

of its message, its ideas, its subject matter, or its content." *United States v. Alvarez*, 567 U.S. 709, 716,

132 S. Ct. 2537, 183 L. Ed. 2d 574 (2012) (*plurality opn.*) (internal quotation marks and citation

omitted).  -Violation of a constitutional right is considered "irreparable harm." *Jolly v. Coughlin*, 76

F.3d 468, 482 (2d Cir.1996) ("The district court ... properly relied on the presumption of irreparable

injury that flows from a violation of constitutional rights."); *see also, Charette v. Town of Oyster Bay*, 159

F.3d 749, 755 (2d Cir.1998) ("In the context of a motion for a preliminary injunction, violations of First Amendment rights are commonly considered irreparable injuries.") (citation and internal quotation marks omitted).  That is, a violation of a First Amendment or speech right is essentially *per se* irreparable harm.

That is because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Stagg P.C. V. United States Dep't of State*, 158 F.Supp. 3d 203 (S.D.N.Y. Jan. 26, 2016).[2] Courts have consistently held that constitutional injuries lack an adequate remedy at law, because "irreparable injury means injury for which a monetary award cannot be adequate compensation" (*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)), and as noted above, there is no substitute for speaking in the moment.

Plaintiffs' loss of First Amendment freedoms is both continuing and imminent.  Every moment the NYPD continues to chill the picket, more speech is lost.  Thus, the harm to Plaintiffs is irreparable for purposes of their requested injunction.  Directly on point is *Bronx Household of Faith v. Board of Educ. of City of New York*, 331 F.3d 342, 347-48 (2d Cir. 2003).  There, the Second Circuit affirmed an injunction to prevent a School District's *continuing* denial of access to school space in breach of their First Amendment rights. *Id.* at 348-53.  Likewise, in *Elrod v. Burns*, 427 U.S. 347, 373 (1976), injury to the identified First Amendment interests was "both threatened and occurring at the time of the respondents' motion."  In situations like this one — where a live situation involves the repression of First Amendment or speech rights — irreparable harm exists as a matter of law.

---

[2] The Second Circuit has also ruled that irreparable harm may exist "through loss of reputation, good will, and business opportunities." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004).

## II.   **Plaintiffs are Likely to Succeed on the Merits.**

### A.      Plaintiffs are likely to succeed on their First Amendment claim.

The "right to associate for the purpose of engaging in those activities protected by the First Amendment-speech, assembly, petition for the redress of grievances, and the exercise of religion" - is constitutionally guaranteed "as an indispensable means of preserving other individual liberties." *Roberts v. United States Jaycees*, 468 U.S. 609, 609 (1984). "'The right of peaceable assembly is a right cognate to . . . free speech and . . . is equally fundamental.'" *Jones v. Parmley*, 465 F.3d 46, 56 (2nd Cir. 2006) (internal citation omitted). "The Supreme Court has declared that the First Amendment protects political demonstrations and protests-activities at the heart of what the Bill of Rights was designed to safeguard. *See Boos v. Barry,* 485 U.S. 312, 318, … (1988) (calling organized political protest 'classically political speech' which 'operates at the core of the First Amendment).'" *Id.*; *see also Gonzalez v. City of New York*, 2015 WL 6873451, *5 (S.D.N.Y. Nov. 9, 2015) (same); *Case v. City of New York*, 233 F.Supp.3d 372, 390 (S.D.N.Y. 2017) (peaceably assembling and demonstration is conduct protected by the First Amendment) (citing cases) and *id.* ("Plaintiffs were engaged in First Amendment protected activity at the time of their arrests").

The "right to associate for the purpose of engaging in those activities protected by the First Amendment-speech, assembly, petition for the redress of grievances, and the exercise of religion" - is constitutionally guaranteed "as an indispensable means of preserving other individual liberties." *Roberts v. United States Jaycees*, 468 U.S. 609, 609 (1984). "'The right of peaceable assembly is a right cognate to . . . free speech and . . . is equally fundamental.'" *Jones v. Parmley*, 465 F.3d 46, 56 (2nd Cir. 2006) (internal citation omitted). "The Supreme Court has declared that the First Amendment protects political demonstrations and protests-activities at the heart of what the Bill of Rights was designed to safeguard. *See Boos v. Barry,* 485 U.S. 312, 318, … (1988) (calling organized political protest 'classically political speech' which 'operates at the core of the First Amendment).'" *Id.*; *see also*

*Gonzalez*, 2015 WL 6873451 at *5 (same); *Case*, 233 F.Supp.3d at 390 (peaceably assembling and demonstration is conduct protected by the First Amendment) (citing cases) and *id.* ("Plaintiffs were engaged in First Amendment protected activity at the time of their arrests"). Past that, the rights implicated here go beyond those of Plaintiffs and their members – they include the rights of the many intended recipients of their expressive conduct and association. For example, First Amendment jurisprudence recognizes that rallies, marches, and demonstrations frequently engage passersby and stir observers to become participants. *See, e.g., Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 611-612 (6th Cir. 2005).

"Because …this case involves a political demonstration, …it must be examined with the heightened scrutiny required by the First Amendment's protection of free expression." *Akinnagbe v. City of New York,* 128 F.Supp.3d 539, 548 (E.D.N.Y. 2015). This is so because, at the outset and after all, the loss of First Amendment freedoms, even for "minimal periods" of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Therefore, "governmental actions" that "directly suppress" or have "the practical effect of discouraging" protests "can be justified only upon some overriding valid interest of the State." *NAACP v. Patterson*, 357 U.S. 449, 460, 461 (1958).

The New York City streets and sidewalks at issue are traditional public fora that have achieved a special status in the law. They are examples of traditional public fora which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO*, 307 U.S. 496, 515-516 (1939); *see also H.E.R.E. v. v. City of New York*, 311 F.3d 534, 545, 548 (2nd Cir. 2002). ("Streets, parks and sidewalks are the paradigms of a public forum…." (internal quotation omitted)); *see also* ; *Marcavage v. City of New York*, 689 F.3d 98, 104 (2nd Cir. 2012) ("the sidewalks of New York are the 'prototypical' traditional public forum") (citing cases).

"'Speech finds its greatest protection in traditional public fora.'" *Deegan v. City of Ithaca*, 444 F.3d 135, 142 (2ⁿᵈ Cir. 2006) (internal citation omitted). "The government's ability to restrict speech in such locations is 'very limited.'" *McCullen v. Coakley*, 134 S.Ct. 2518, 2529 (2014) (citing *Grace*, 461 U.S. at 177).

In connection with First Amendment assemblies in such traditional public fora, the Supreme Court has "long applied the 'clear and present danger' test to protest cases to determine when police interference is constitutional." *Jones v. Parmley*, 465 F.3d at 56-57, citing, *inter alia, Cantwell v. Connecticut*, 310 U.S. 296, 308-309 (1940). "In the protest context, the Supreme Court has … well articulated the contours of the right [to assemble] and [has] made clear that the police may not interfere with demonstrations unless there is a 'clear and present danger' of riot, imminent violence, interference with traffic or other immediate threat to public safety." *Id.* at 57, citing *Cantwell*, 310 U.S. at 308-309. Under this "clear and present danger" test, "[n]either energetic, even raucous, protesters who annoy or anger audiences, nor demonstrations that slow traffic or inconvenience pedestrians, justify police stopping or interrupting a public protest." *Id.* at 58 (citing and characterizing *Cox v. Louisiana*, 379 U.S. 536, 546-47 (1965)  (overturning convictions of "group of protesters who provoked a visceral, angered response and slowed traffic" on the grounds that doing so "did not jeopardize their speech rights") and *Edwards v. South Carolina*, 3772 U.S. 229, 232, 237 (1963) ("*'clear and present danger' means more than annoyance, inviting dispute or slowing traffic*") (emphasis added).

> i. *Defendants violated Plaintiffs' First Amendment-based rights under a so-called "time/place/manner" analysis.*

"The Second Circuit has recognized that a spontaneous police order to demonstrators to relocate can be viewed through the lens of time, place, and manner doctrine." *Akinnagbe,* 128 F.Supp.3d at 548-49, discussing *Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2nd Cir. 2013)); *see also Christina Gonzalez* v. NYC, 14 Civ. 7721 (LTS), 2016 WL 5477774, *5-6 (SDNY Sept. 29, 2016)

(same); *Wiles v. City of New York*, 13-cv-2898 (TPG) 2016 WL 6238609, *5 n. 1 (SDNY Oct. 25, 2016) (same); *Case*, 233 F.Supp.3d at 391.

Content-neutral[3] time, place and/or manner restrictions placed on the exercise of First Amendment rights must be narrowly tailored to serve a significant governmental interest and to permit ample alternative channels for expression. *Deegan*, 444 F.3d at 142, *citing Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

**First,** A reasonable jury could find that the restrictions Defendants imposed on Plaintiffs' First Amendment-protected conduct lacked narrow tailoring. A restriction is narrowly tailored "if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). "The 'narrowly tailored' standard does not tolerate time, place, or manner regulation that may burden substantially more speech than necessary to achieve its goal, nor does it require that the least restrictive alternative available be used." *Deegan*, 444 F.3d at 144, *citing Ward*, 491 U.S. at 788-789. Put another way, "the 'essence of narrow tailoring' is that the regulation must 'focus[] on the source of the evils the [government] seeks to eliminate . . . and eliminate[] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Ward*, 491 U.S. at 791.

The government "'bears the burden of showing that its restriction of speech is justified under the traditional 'narrowly tailored' test,'" *Deegan*, 444 F.3d at 142 (internal citation omitted), and determining whether a particular regulation accords with the Constitution "involves a fact specific and situation specific inquiry" in which "'[t]he nature of a place, 'the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable.'" *Id., quoting Grayned*,

---

[3] Plaintiffs respectfully submit that a reasonable jury could find that the restrictions Defendants imposed on Plaintiffs' protected conduct were not content neutral – including because Defendants lacked appropriate justification for their approach to the picket — but because the standard under strict scrutiny is higher, Plaintiffs only address the standard under intermediate scrutiny – applicable to content-neutral regulations – herein.

408 U.S. at 116-117. "The crucial question (in determining whether [particular] expressive conduct may be prohibited) is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned*, 408 U.S. at 116-117.

The government must also identify the substantial interest(s) purportedly served by the restrictions and justify them. *See, e.g., Greater New Orleans Broad. Assoc., Inc., v. U.S.*, 527 U.S. 173, 183 (1999). The government must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree. *See Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993). In this connection, "a court "may not simply assume that [a decision by local officials] will always advance the asserted state interests sufficiently to justify its abridgement of expressive activity." *City of Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 496 (1986) (*citing and quoting Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 803 n. 22 (1984)).[4]

"Because the excuses offered for refusing to permit the fullest scope of free speech are often disguised, [Courts] must independently determine the rationality of the government's interest implicated and whether the restrictions are narrowly drawn *to further that interest*." *Olivieri v. Ward*, 801 F.2d 602, 606 (2ⁿᵈ Cir. 1986) (internal quotations omitted) (emphasis added); *see also, e.g., Case*, 233 F.Supp.3d at 392 (reading *Madsen* to require a "heightened review requiring that the restriction burden no more speech than necessary") (citing *McTernan v. City of York*, 564 F.3d 636, 655-56 (3ʳᵈ Cir. 2009) and citing *Pouillon v. City of Owosso*, 206 F.3d 711, 717-18 (6ᵗʰ Cir. 2000).

In this connection, when a plausible, less restrictive alternative is offered to a speech restriction, it is the government's obligation to prove that the alternative will be ineffective to achieve its goals. *See, e.g., United States v. Playboy Entertainment* Group, 529 U.S. 803, 816 (2000).

---

[4] Similarly, a court may not simply presume either that the governmental interests identified by the government were in play to the extent that the government alleges, or that police actions were in fact undertaken to advance those interests, particularly where a jury could ultimately find otherwise based on the record.

*Second*, a reasonable jury could find that the restrictions Defendants imposed on Plaintiffs' First Amendment-protected conduct failed to provide ample alternative channels for expression to Plaintiffs.  An alternative channel for communication is "adequate and therefore ample" in the Second Circuit "if it is within close proximity to the intended audience." *Marcavage II*, 689 F.3d at 107 (internal citation and quotation omitted). A proposed alternative mode of communication may be constitutionally inadequate if -- as is the case here -- the speaker's "ability to communicate effectively is threatened."  *See, e.g., Taxpayers for Vincent*, 466 US at 812.

Where participation in a demonstration is the form of communication at issue, ending or limiting the demonstration ends or limits participation in that form of communication and expression.  Based on the record evidence, a reasonable jury could find that the restrictions foreclosed Plaintiffs from utilizing ample alternative channels for expression to Plaintiffs. "[P]icketing is qualitatively different from other modes of communications." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 580 (1988) (internal quotation marks omitted) (citations omitted).  And by interfering with and attempting to reshape and chill the picket, Defendants have foreclosed just that qualitatively different form of speech:  Nothing besides a picket can adequately stand in for it.

> B.        Plaintiffs are likely to succeed on their 29 U.S.C. § 157 claim.

Section 1983 provides remedies for violations of federal statutory rights by persons acting under color of state law.  42 U.S.C. § 1983.   It is long established that "the [remedial] coverage of this statute must be broadly construed."  *Golden State Tr. Corp. v. Los Angeles*, 493 US 103, 105 (1989) (*Golden State II*) (citations omitted).  Section 1983 additionally "provides a remedy 'against all forms of official violation of federally protected rights.'"  *Id.* at 106 (*quoting Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 700-701, 98 S. Ct. 2018 (1978)).

Courts apply a two-part test to determine the validity of a section 1983 claim for enforcement of a statutory right: (1) if a plaintiff asserts the deprivation of a federal []statutory right, a 1983 claim is presumed to exist unless (2) the defendant satisfies its burden of showing that "Congress specifically foreclosed a remedy under § 1983 . . . by providing a comprehensive enforcement mechanism for protection of a federal right." Id. (internal citations, quotation marks and alteration omitted). Here, both points are established as a matter of law.

As to the first point (deprivation of a statutory right), Section 7 of the NLRA grants employees the right to form, join and assist labor organizations, and undertake concerted activity "for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. The Supreme Court and the National Labor Relations Board "have long recognized employee picketing not prohibited by the Act as activity protected under this provision." *CSEA v. NLRB,* 569 F.3d 88, 92 (2d Cir. 2009) (citing authority); *see generally Steelworkers v. Labor Board*, 376 U.S. 492, 499 (1964).

Indeed, the picketing at issue is precisely that deemed protected by the NLRA. "[P]icketing is qualitatively different from other modes of communications." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 580 (1988) (internal quotation marks omitted) (citations omitted). "Classically, picketers walk in a line and, in so doing, create a symbolic barrier." *Overstreet v. United Bhd. Of Carpenters & Joiners of Am., Loc. Union No. 1506*, 409 F.3d 1199, 1213 (9th Cir. 2005) (*citing Honolulu Typographical Union No. 37 v. N.L.R.B.*, 401 F.2d 952, 953-54 (D.C. Cir. 1968). A defining characteristic of picketing is that it creates a physical barrier between a business and employees or potential customers, thereby keeping employees from work or customers away from the employer's business. *Ohr v. International Union of Operating Engineers, Local 150, AFL-CIO*, 612 F.Supp.3d799, 807 (N.D. Ill. 2020) (*quoting 520 S. Mich. Ave. Assocs., Ltd. V. Unite Here Local 1*, 760 F.3d 708, 720 (7th Cir. 2014)).

As to the second point (the City's burden to show NLRA pre-emption), it is equally well established that the National Labor Relations Act does not, in any way, abrogate a claim under Section 1983 when a state actor interferes with NLRA Section 7 rights. *Golden State II*, 493 U.S. at 108 (citing authority) ("Although the National Labor Relations Board (NLRB or Board) has exclusive jurisdiction to prevent and remedy unfair labor practices by employers and unions, it has no authority to address conduct protected by the NLRA against governmental interference.").

So, as set out above, Plaintiffs are likely to succeed on their 29 U.S.C. § 157 claim (brought through § 1983).

### III.     The Balance of the Equities Favors Plaintiffs.

"Securing First Amendment rights is in the public interest." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488, 2013 U.S. App. LEXIS 21579, *7, 2013 WL 5746142 (2d. Cir. Oct. 24, 2013). Likewise, "the Government does not have an interest in the enforcement of an unconstitutional law." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488, 2013 U.S. App. LEXIS 21579, *7, 2013 WL 5746142 (2d. Cir. Oct. 24, 2013) (*citing Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003)).

Here, the equities favor Plaintiffs dramatically because "[t]he constitutional guarantee of free speech serves significant societal interests wholly apart from the speaker's interest in self-expression." *Pacific Gas and Elec. Co. v. Public Utilities Comm'n of California*, 475 U.S. 1, 8, 106 S. Ct. 903, 89 L. Ed. 2d 1 (1986). As set forth above, Plaintiffs have a likelihood of success on the merits precisely because the Defendants' conduct is unconstitutional. As such, the requested preliminary injunction and TRO would serve the public interest by stopping Defendants constitutional violations. *See, for example, Am. Patriot Express v. City of Glens Falls*, 2020 U.S. Dist. LEXIS 170902, *22, 2020 WL 5593929 (N.D.N.Y. Sept. 18, 2020) ("Having determined that [Plaintiff] has demonstrated a substantial likelihood of success on the merits, we believe that the public interest is

14

better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression.").

**IV.    No Security Should be Required.**

"Rule 65(c) gives the district court wide discretion to set the amount of a bond, and even to dispense with the bond requirement where there has been no proof of likelihood of harm, or where the injunctive order was issued to aid and preserve the court's jurisdiction over the subject matter involved." *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (internal quotations omitted). Since there is no harm to Defendants in allowing Plaintiffs to picket, and Defendants will not be able to show any proof of likelihood of harm from a TRO, the Court should dispense with that requirement here.

**CONCLUSION**

For the reasons above, Plaintiffs ask the Court to grant their motion for a TRO, as set out in the proposed Order to Show Cause.

Respectfully submitted,

**EISNER DICTOR & LAMADRID, P.C.**

By: _____
Thomas J. Lamadrid
39 Broadway, Suite 1540
New York, NY 10006
T: 212-473-8700
F: 212-473-8705
thomas@eisnerdictor.com

**COHEN&GREEN P.L.L.C.**

By: _____

15

Elena L. Cohen
J. Remy Green
Leena Widdi, *pro hac vice forthcoming*
1639 Centre Street, Suite 216
Ridgewood, NY 11385
(929) 888-9480
elena@femmelaw.com
remy@femmelaw.com
leena@femmelaw.com


**GIDEON ORION OLIVER**

_____

277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682 x 5
f: 646-349-2914
Gideon@GideonLaw.com

*Attorneys for Plaintiffs*